UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

HEARST HOLDINGS, INC.,

                                Plaintiff,

               v.

TROPICO DIFFUSION,

                          Defendant.

------------------------------------------------------------x

08 ___ Civ. 1546 (WHP)(GWG)
ECF Case

**PLAINTIFF'S MEMORADUM OF LAW IN SUPPORT OF
ITS MOTION FOR A PERMANENT INJUNCTION
OR IN THE ALTERNATIVE A PRELIMINARY INJUNCTION**

Jonathan Donnellan
Ravi V. Sitwala
THE HEARST CORPORATION
300 West 57th Street, 40th Floor
New York, NY 10019
Telephone: (212) 649-2020
Facsimile: (212) 649-2035
*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

Table of Authorities ........................................................................................... iii

Preliminary Statement ........................................................................................ 1

Statement of Facts ............................................................................................. 2

Argument ........................................................................................................... 3

    I.    This Court Should Permanently Enjoin Tropico's
         French Lawsuit ...................................................................................... 3

       A.    The License Agreement Unequivocally Bars
            Tropico's French Lawsuit......................................................... 3

       B.    The Requirements for an Anti-Suit Injunction
            Are Easily Met Here ................................................................. 4

    II.   In the Alternative, the Court Should Grant a
         Preliminary Anti-Suit Injunction ......................................................... 7

Conclusion ......................................................................................................... 9

## TABLE OF AUTHORITIES

*Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991) ...............................................6

*China Trade & Development Corp. v. M.V. Choong Yong*,
   837 F.2d 33, 35 (2d Cir. 1987) .............................................................4, 5, 7

*E.&J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984
   (9th Cir. 2006) ..................................................................................5, 6, 7, 8

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak
   Dan Gas Bumi Negara*, 500 F.3d 111 (2d Cir. 2007) .......................................4

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak
   Dan Gas Bumi Negara*, 335 F.3d 357 (5th Cir. 2003) .....................................8

*Maryland Casualty Co. v. Realty Advisory Board on
   Labor Relations*, 107 F.3d 979 (2d Cir.1997) .................................................8

*MyWebGrocer, LLC v. Hometown Info, Inc.*,
   375 F.3d 190 (2d Cir. 2004) .............................................................................7

*Paramedics Electromedicina Comercial, Ltda v.
   GE Medical Systems Information Technologies, Inc.*,
   369 F.3d 645 (2d Cir. 2004) ....................................................................4, 5, 7

*Phillips v. Audio Active Ltd.*, 494 F.3d 378, 389-90
   (2d Cir. 2007) ..................................................................................................4

## PRELIMINARY STATEMENT

Hearst Holdings, Inc. ("Hearst Holdings" or "King Features") entered into a license agreement with Tropico Diffusion ("Tropico") concerning rights to its King Features Syndicate division's Betty Boop character. The agreement was terminated last September by King Features according to its for-cause termination provisions, and, in any case, would have expired at the end of last year. The agreement explicitly designates the courts of the State of New York and this Court as the sole courts in which disputes arising under or relating to the agreement may be brought. In clear violation of this provision, Tropico recently brought suit against King Features concerning the termination and expiration of the agreement in French court, seeking over four million dollars in damages. The French suit should be enjoined.

Under Second Circuit law, a foreign suit may be enjoined where a domestic action involving the same parties would be dispositive of the foreign action, and maintenance of the foreign suit would frustrate a policy of the enjoining forum. Here, both preconditions are met, and the French suit frustrates the strong policy recognized by the Supreme Court of enforcing forum selection clauses, especially in the international commercial context. The Second Circuit has upheld an anti-suit injunction in the analogous context of an arbitration clause, and the Ninth Circuit has ordered an injunction based on facts strikingly similar to those here. This Court should not permit Tropico to circumvent the agreed-upon forum clause in order to drag King Features across the Atlantic to defend against Tropico's vexatious and baseless claims.

## STATEMENT OF FACTS

King Features licensed defendant Tropico to exploit the Betty Boop character in France in a license that was set to expire on December 31, 2007 (the "License Agreement" or "Agreement"). (Complaint Ex. A.) By July 2007, after the parties could not agree on renewal terms (as Tropico sought to expand its license to cover all of Europe with exclusivity), King Features elected not to renew the License Agreement, and gave Tropico written notice of this decision on August 2, 2007. (Complaint ¶¶ 18-19.) In September 2007, after Tropico failed to timely pay certain royalty amounts to King Features, King Features terminated the Agreement pursuant to the termination provisions of the Agreement. (*Id.* ¶¶ 20-21.)

Early this year, Tropico filed suit in French court for damages allegedly resulting from improper termination and non-renewal of the License Agreement. (*See* Complaint Ex. B (French summons and complaint).) According to the lawsuit, due to the longstanding relationship between Tropico and King Features, French public policy requires that King Features give Tropico at least four years of notice in order to terminate the relationship (notwithstanding the actual term of the License Agreement or the fact that the Agreement by its terms is governed by New York law rather than French law). Tropico seeks damages of over four million dollars in the form of lost profits for the four years that it contends it ought to have had rights to Betty Boop before the relationship could be terminated.

The License Agreement plainly states that all suits arising under it or related to it must only be brought in either New York State court or this Court:

> This Agreement shall be governed by the laws of the State of New York applicable to agreements fully executed and performed therein. *Any*

2

> *claims arising hereunder or relating hereto shall be prosecuted only in*
> *the appropriate court of the State of New York or in the United States*
> *District Court for the Southern District of New York and neither party*
> *shall make any claim or demand in any other jurisdiction or forum.* The
> parties consent to the personal jurisdiction of such courts and to the
> service of process by mail.

(Complaint, Ex. A ¶ 22 (emphasis added).)  Accordingly, King Features brought this suit

for, among other relief, a declaration that it properly terminated the License Agreement

(or, in the alternative, properly let it lapse) and an injunction prohibiting Tropico from

continuing the French litigation.[1]  By this motion, King Features seeks a permanent

injunction against Tropico's pursuit of the French litigation, or, in the alternative, a

preliminary injunction granting the same relief.

## ARGUMENT

**I.    THIS COURT SHOULD PERMANENTLY ENJOIN TROPICO'S FRENCH LAWSUIT**

    *A.    The License Agreement Unequivocally Bars Tropico's French Lawsuit*

The parties – both sophisticated companies – freely negotiated a license

agreement that chooses this Court (or the New York State courts) as the exclusive forum

for disputes both arising out of the agreement and related to it.  The clause provides:

> Any claims arising hereunder or relating hereto shall be prosecuted *only* in
> the appropriate court of the State of New York or in the United States
> District Court for the Southern District of New York and *neither party*
> *shall make any claim or demand in any other jurisdiction or forum*.

(Complaint, Ex. A ¶ 22 (emphases added).)  There is no ambiguity – all suits arising

under or relating to the License Agreement must be brought in New York State court or

this Court and no other claims or demands may be brought elsewhere.  Tropico's French

lawsuit unquestionably arises out of and relates to the License Agreement – it seeks a

---

[1] The suit also seeks to enjoin further marketing and sale of Betty Boop products by
Tropico and to collect damages from Tropico for breach of contract.

declaration that the Agreement was improperly terminated. *See Phillips v. Audio Active Ltd.*, 494 F.3d 378, 389-90 (2d Cir. 2007) (discussing the meaning of "arising out of" and "relating to" in forum selection clauses).

  B.  *The Requirements for an Anti-Suit Injunction Are Easily Met Here*

    Courts' equitable powers include the power to enjoin litigants over whom they have personal jurisdiction from maintaining lawsuits in foreign jurisdictions. *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 35 (2d Cir. 1987) ("The power of federal courts to enjoin foreign suits by persons subject to their jurisdiction is well-established."). The Second Circuit applies the *China Trade* test in determining whether an anti-suit injunction should be issued. *See Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111 (2d Cir. 2007) (discussing and applying the *China Trade* test). "Under the *China Trade* test, an anti-suit injunction against foreign litigation may be imposed only if two threshold requirements are met: '(A) the parties are the same in both matters, and (B) resolution of the case before the enjoining court is dispositive of the action to be enjoined.'" *Id.* at 119 (quoting *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 652 (2d Cir. 2004)). "If these two threshold requirements are satisfied, courts are directed to consider a number of additional factors, including whether the parallel litigation would (1) . . . frustrat[e] a policy in the enjoining forum (2) . . . be vexatious; (3) . . . threat[en] . . . the issuing court's *in rem* or *quasi in rem* jurisdiction; (4) . . . prejudice other equitable considerations; or (5) . . . result in delay, inconvenience, expense, inconsistency, or a race to judgment." *Id.* (quotations and citations omitted; alterations in original).

The Second Circuit, applying the *China Trade* test, has upheld the issuance of the anti-suit injunction where the foreign suit was being maintained in the face of an arbitration clause. *Paramedics*, 369 F.3d at 654. In *Paramedics*, the court recognized that "[f]ederal policy strongly favors the enforcement of arbitration agreements," *id.* at 653, and was not swayed by the enjoined party's argument that its foreign action involved claims particular to the forum country that would not get fairly presented in the arbitration, *id.* ("[T]o the extent that the claim is arbitrable, the district court's ruling is dispositive even if the claim is unique to Brazil.").

Applying a test substantially similar to the *China Trade* test, the Ninth Circuit has ordered the issuance of an anti-suit injunction in the context of a forum selection clause, facing facts nearly identical to those here. *See E. &J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984 (9th Cir. 2006).

In *Gallo*, an Ecuadorian distributor, Andina, of a Californian winery, Gallo, sued the winery in Ecuador for various claims relating to the distributorship including claims specific to Ecuadorian law. Gallo sued Andina in California, seeking an injunction against the Ecuadorian litigation based on a forum selection clause in the distributorship agreement that selected California as the sole forum for litigation. The district court denied the injunction, but the Ninth Circuit reversed. *Id.* at 987-99.

Initially, the Court found that the parties and claims in both cases were the same notwithstanding Andina's Ecuadorian claims. It noted that those claims may not be viable at all, given the California choice-of-law clause in the distributorship agreement, and, even if they were, the California court could adjudicate them. *Id.* at 991.

5

The Court then found that the Ecuadorian litigation would frustrate the policy of enforcement of forum selection clauses. Noting that "the Supreme Court has established a strong policy in favor of the enforcement of forum selection clauses," *id.* at 992, the Ninth Circuit explained the importance of this policy at length:

> Forum selection clauses are increasingly used in international business. When included in freely negotiated commercial contracts, they enhance certainty, allow parties to choose the regulation of their contract, and enable transaction costs to be reflected accurately in the transaction price. We have also repeatedly stressed the importance of forum selection clauses and have held that they "should be enforced absent strong reasons to set them aside." Without an anti-suit injunction in this case, the forum selection clause effectively becomes a nullity. The potential implications for international commerce are considerable.

*Id.* (citing, among other authorities, *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-94 (1991)).

The Court rejected the district court's suggestion that Gallo should have petitioned the Ecuadorian court to enforce the forum selection clause. *Id.* at 993. It also rejected the district court's finding that considerations of comity outweighed the policy in favor of enforcing the forum selection clause. It found irrelevant that the fact that the Ecuadorian suit was filed first. *Id.* at 994. Indeed, as the Court recognized, if Andina were to benefit from filing first in Ecuador, "any party seeking to evade the enforcement of an otherwise-valid forum selection clause need only rush to another forum and file suit." *Id.* Similarly, it gave no weight to the fact that Ecuadorian law may be dispositive, given the choice-of-law clause. *Id.* On balance, it found that comity did not weigh against issuance of the anti-suit injunction, ordered the district court to enjoin the Ecuadorian litigation, and suggested that sanctions may be warranted depending on

Andina's conduct between the issuance of the opinion and the entry of the injunction. *Id.* at 995.

The facts here easily satisfy the *China Trade* test. The parties in the French suit – Tropico and the Hearst Holdings' King Features division – are both parties to this suit. And resolution of this case, and, in particular, the claim for declaratory relief that the License Agreement was properly terminated and not renewed, is dispositive of the French case, which only seeks to challenge the termination and non-renewal of the License Agreement. As in *Paramedics* and *Gallo*, maintenance of the suit to be enjoined – the French suit – would frustrate a strong policy of this forum – the enforcement of freely negotiated choice of forum clauses. The French litigation is also vexatious, and could result in significant inconvenience and expense to King Features and inconsistent rulings. Accordingly, the Court should enjoin Tropico from pursuing the French litigation.

## II. IN THE ALTERNATIVE, THE COURT SHOULD GRANT A PRELIMINARY ANTI-SUIT INJUNCTION

While King Features believes a permanent anti-suit injunction is warranted for the reasons discussed above, should the Court decline to issue a permanent injunction, King Features requests a preliminary injunction against the French litigation.

Generally, "[a] party seeking a preliminary injunction must demonstrate (1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *MyWebGrocer, LLC v. Hometown Info, Inc.*, 375 F.3d 190, 192 (2d Cir. 2004). However, in the context of anti-suit injunctions, it is unclear whether factors

other than the likelihood of success in obtaining the anti-suit injunction are relevant to whether to grant preliminary relief. *See Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 364 (5th Cir. 2003) ("Although both the district court and the parties discussed all four prerequisites to the issuance of a traditional preliminary injunction, the suitability of such relief ultimately depends on considerations unique to antisuit injunctions."); *Gallo*, 446 F.3d at 990-91 (distinguishing between traditional preliminary injunctions and preliminary anti-suit injunctions). To the extent that the relevant inquiry is simply whether King Features is likely to prove it is entitled to an anti-suit injunction, King Features has demonstrated its entitlement above.[2]

In any event, were King Features required to show irreparable harm in addition to a likelihood of ultimately obtaining the injunction, the need to litigate a dispute overseas in a forum other than the forum chosen in an agreed-upon forum selection clause in the absence of an injunction should suffice. *Cf. Md. Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979 (2d Cir.1997) ("Maryland would be irreparably harmed by being forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable."). Accordingly, King Features is at least entitled to a preliminary injunction.

---

[2]    As both the Fifth and Ninth Circuits have found, the proper merits question relates not to the underlying dispute, but rather to the merits of the request for an anti-suit injunction. *See Karaha*, 335 F.3d at 364 n.19; *Gallo*, 446 F.3d at 990-91.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion for a permanent injunction mandating Defendant dismiss its French action, or, in the alternative, a preliminary injunction granting the same relief.

Dated:    New York, New York
          February 14, 2008

                                    _____
                                    Jonathan Donnellan
                                    Ravi V. Sitwala
                                    THE HEARST CORPORATION
                                    300 West 57th Street, 40th Floor
                                    New York, NY 10019
                                    Telephone: (212) 649-2020
                                    Facsimile: (212) 649-2035
                                    JDonnellan@hearst.com

                                    *Attorneys for Plaintiff*