UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
HEARST HOLDINGS, INC.,

                Plaintiff,                              No. 08 Civ. 1546 (WHP)

    v.                                                      ECF CASE

TROPICO DIFFUSION,

                Defendant.

------------------------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TROPICO DIFFUSION'S OPPOSITION TO PLAINTIFF'S MOTION FOR A PERMANENT INJUNCTION OR IN THE ALTERNATIVE A PRELIMINARY INJUNCTION

Kathleen M. Kundar
JooYun Kim
FOX HORAN & CAMERINI LLP
825 Third Avenue, 12th Floor
New York, New York 10022
T: (212) 480-4800
F: (212) 269-2383
*Attorneys for Defendant Tropico Diffusion*

# TABLE OF CONTENTS

**Page No.**

TABLE OF AUTHORITIES ................................................................................................... ii

BACKGROUND ..................................................................................................................... 1

LEGAL ARGUMENT .............................................................................................................. 3

I.    PLAINTIFF'S MOTION FOR A PERMANENT ANTI-SUIT INJUNCTION
SHOULD BE DENIED .................................................................................................. 3

    A.    The Legal Standard For An Anti-Suit Injunction ..................................... 3

    B.    The Threshold Requirements For An Anti-Suit Injunction Have
Not Been Satisfied In This Case ............................................................... 4

    C.    The *China Trade* Factors Do Not Warrant An Injunction Enjoining
The French Code Litigation ...................................................................... 8

    D.    Under Principles Of Comity The Anti-Suit Injunction Should Be
Denied ....................................................................................................... 9

II.    PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION SHOULD BE
DENIED ........................................................................................................................ 10

CONCLUSION ....................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page No(s).**

**CASES**

*Canon Latina America, Inc. v. Lantech (CR), S.A.*,
　508 F.3d 597 (11th Cir. 2007) ................................................................................... 5, 6, 7

*China Trade and Dev. Corp. v. M.V. Choong Yong*,
　837 F.2d. 33 (2d Cir. 1987) ....................................................................................... 3, 8, 9

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*,
　950 F. Supp. 48 (E.D.N.Y. 1996) ................................................................................... 4, 7

*Comverse, Inc. v. Am. Telecommunications, Inc.*,
　No. 06 Civ. 6825 (PKL), 2006 WL 3016315, (S.D.N.Y. Oct. 23, 2006) ...................... 10, 11

*E.&J. Gallo Winery v. Andina Licores S.A.*,
　446 F.3d 984 (9th Cir. 2006) ............................................................................................. 8

*Empresa Generadora de Electricidad Itabo, S.A. v. Corporacion Dominicana de Empresas Electricas Estatales*,
　No. 05 Civ. 5004 RMB, 2005 WL 1705080, (S.D.N.Y. Jul. 18, 2005) ............................. 11

*Energy Capital Co. v. Caribbean Trading and Fidelity Corp.*,
　No. 93 Civ. 8100, 1996 WL 157498 (S.D.N.Y. Apr. 4, 1996) ........................................... 11

*Goss Int'l Corp. v. Man Roland Druckmaschinen Aktiengesellschaft*,
　491 F.3d 355 (8th Cir. 2007) ............................................................................................. 9

*LAIF X SPRL v. Axtel, S.A. de C.V.*,
　390 F.3d 194 (2d Cir. 2004) ........................................................................................ 9, 10

*Matter of Maritima Aragua, S.A.*,
　No. 89 Civ. 5430 (JSM), 1990 WL 180135 (S.D.N.Y. Nov. 13, 1990) ............................. 4, 7

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*,
　369 F.3d 645 (2d Cir. 2004) ............................................................................................. 3

*Space Imaging Europe, Ltd. v. Space Imaging L.P.*,
　No. 98 Civ. 2291(DC), 1999 WL 511759 (S.D.N.Y. Jul. 19, 1999) .................................. 4, 7

*United States v. Klinghoffer Bros. Realty Corp.*,
　285 F.2d 487 (2d Cir. 1961) ............................................................................................. 5

*Warden v. E.R. Squibb & Sons, Inc.*,
　840 F. Supp. 203 (E.D.N.Y. 1993) ................................................................................... 5

*Wells Fargo Bank Northwest, N.A. v. Energy Ammonia Trans. Corp.*,
　No. 01 Civ. 5864 (JSR), 2002 WL 31368624 (S.D.N.Y. Oct. 21, 2002) ........................... 5

Before this Court is a motion for a permanent or preliminary anti-suit injunction brought on by order to show cause, requested by Plaintiff Hearst Holdings, Inc., King Features Syndicate Division's ("King Features" or "Plaintiff"). Defendant Tropico Diffusion ("Tropico") submits this memorandum of law in opposition to Plaintiff's motion and shows here that an injunction should not be granted.

## BACKGROUND

Tropico is a French corporation that has been manufacturing and marketing merchandise under various license agreements for approximately 20 years. Beginning in 1994, King Features granted Tropico the rights to exploit merchandise with the Betty Boop character in France. In order to promote the national development of Betty Boop merchandise in France, Tropico created a network of franchises under the name "Avenue of the Stars." Today, the network consists of 26 franchises. *See* Declaration of Ouri Amar, dated February 28, 2008 ("Amar Decl.") ¶ 2. The business relationship between the parties was so successful and intimate that certain articles of merchandise were manufactured under a common trademark. In total, King Features and Tropico have entered into 19 licensing agreements with varying covered territories and scope of exploitation. *See id*. ¶¶ 3-4. The most recent agreement, dated as of January 26, 2005 (the "Agreement") is the subject of this lawsuit and was scheduled to expire on December 31, 2007. *See* Compl.[1] Ex. A; Amar Decl. ¶ 4.

At the end of 2003, because of the commercial success of the Betty Boop merchandise in France, there was an increasing prevalence of unlicensed Betty Boop products, which were hurting Tropico's legitimate market interest. This problem arose because former licensees of the Betty Boop trademark exploited a "sell-off" provision in the agreements, which allowed them to

---

[1] "Compl." refers to the Complaint, dated February 14, 2008, filed by Plaintiff in this action.

continue to sell any remaining Betty Boop products for a period of time post termination.  These former licensees would have unusually high quantities of left over Betty Boop products during the "sell-off" period, but King Features never objected to the practice.  Moreover, because of the laws of the European Union ("EU"), Betty Boop products were freely being imported to France from other member States of the EU.  Accordingly, Tropico in 2006 requested a license for exploiting Betty Boop merchandise in all of Europe.  Nevertheless, King Features did little to stop the saturation of the French market with "unlicensed" Betty Boop products and parallel importations in France of Betty Boop products, to Tropico's business detriment.  *See* Amar Decl. ¶ 5.  King Features ultimately denied Tropico's request for a European license.  The parties continued to negotiate, but on June 18, 2007, to Tropico's surprise, King Features, through its French agent, sent a notice of its intent not to renew even the Agreement for France, which was reaffirmed in an August 2, 2007 written notice.  *See id.* ¶ 6.  On September 28, 2007, King Features terminated the Agreement on the ground that Tropico's payment for royalties in the second quarter of 2007 (totaling EUR 35,000) was overdue.  Previously, Tropico had never been late with a payment for royalties. The "delay" was precipitated by King Features' failure to provide timely approvals for new licensed products pursuant to the Agreement, which was damaging to Tropcio.[2]  Despite King Features' conduct, Tropico did make the payment on October 2, 2007.  *See id.* ¶ 7.

      Notwithstanding the termination provisions in the Agreement, King Features' termination of the Agreement violated Article L.442-6-I-5 of the French Commercial Code, which requires

---

[2] For example, on March 15, 2007, Tropico requested King Features' approval for a certain Betty Boop product.  Having failed to hear from King Features, Tropico sent a reminder on July 10 and King Features finally provided its approval on July 26. Another request for approval of a product, which was first requested in June 2007 and then in July 2007, with reminders on October 15 and October 18, was finally granted by King Features on October 30, 2007. Notably, this was after King Features' termination of the Agreement on September 28.  *See* Amar Decl. ¶ 7.

2

sufficient notice of termination of commercial relations, such as licensing agreements, even if the terms of the contract purport to supplant the French law.  *See* Declaration of Julien Hay, dated February 28, 2008 ("Hay Decl.") ¶ 4.  On January 11, 2008, Tropico commenced an action against King Features in the Commercial Court of Paris, asserting a claim under Article L.442-6-I-5 (the "French Code Litigation") and seeking money damages as provided in the French Commercial Code for the violation.  *See* Compl. Ex. B; Amar Decl. ¶ 8.

Shortly thereafter, on or about February 14, 2008 King Features commenced an action in this Court asserting claims for breach of contract, and requesting declaratory judgment that the Agreement was properly terminated and that the Agreement has expired.  *See* Compl.  King Features also made the instant motion for a permanent injunction, or in the alternative a preliminary injunction, enjoining Tropico from prosecuting the French Code Litigation.

## LEGAL ARGUMENT

I.  **PLAINTIFF'S MOTION FOR A PERMANENT ANTI-SUIT INJUNCTION SHOULD BE DENIED**

   A.  **The Legal Standard For An Anti-Suit Injunction**

An anti-injunction suit against parallel litigation may be imposed only if:  (A) the parties are the same in both matters, and (B) resolution of the case before the enjoining court is dispositive of the action to be enjoined.  *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 652 (2d Cir. 2004) (citing *China Trade and Dev. Corp. v. M.V. Choong Yong*, 837 F.2d. 33, 35 (2d Cir. 1987)).  If this threshold is met, then courts consider a number of factors including the vexatiousness of the parallel proceeding, a "race to judgment" causing additional expense, whether the foreign action threatens the jurisdiction of the enjoining forum, and whether strong public policies of the enjoining forum are threatened by the foreign action.  *China Trade*, 838 F.2d at 36.

3

B.  **The Threshold Requirements For An Anti-Suit Injunction Have Not Been Satisfied In This Case**

Even where the parties in parallel proceedings are the same, when a case is not dispositive of a foreign action, no injunction may be granted. *See, e.g., Space Imaging Europe, Ltd. v. Space Imaging L.P.*, No. 98 Civ. 2291(DC), 1999 WL 511759, at *6 (S.D.N.Y. Jul. 19, 1999) (declining to enjoin party from pursuing a foreign litigation where "at best, it is unclear whether the Court's resolution of this action is dispositive of the action to be enjoined"); *Matter of Maritima Aragua, S.A.*, No. 89 Civ. 5430 (JSM), 1990 WL 180135 (S.D.N.Y. Nov. 13, 1990) (same); *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 950 F. Supp. 48 (E.D.N.Y. 1996) (same).

Although the parties are the same in this lawsuit and the one in France, resolution of this case is not dispositive of the French Code Litigation. In the French Code Litigation, Tropico asserts a claim against King Features for violation of Article L.442-6-I-5 of the French Commercial Code, which requires sufficient notice for terminating commercial relations, such as licensing agreements, even if the terms of the contract purport to supplant the French law. This French Commercial Code provision does not prohibit terminations; rather it seeks to assure that the length of notice of termination given by one contracting party to the other is in proportion to the length and depth of the historical relationship of the parties. The objective of the French law is to give the terminated licensee sufficient time to reorganize its business as affected by the termination in order to prevent so called "brutal terminations" which fail to reasonably take into account the time the parties have done business together and thus effectively robs from the other party what has been achieved by the relationship. *See* Hay Decl. ¶ 4.

The Commercial Division of the Court of Cassation (the highest court in France for financial and commercial matters) recently held that the provisions of Article L.442-6-I-5 constitute public policy. Specifically, the French court held that "[c]lauses allowing for

4

termination without notice cannot create an obstacle to the public policy provisions of Article L.442-6-I-5 of the Commercial Code." Hay Decl. Ex. 2 (*Beaumont v. X "agent de service Peugeot,"* No. 06-15517 (Commercial Division of the Court of Cassation Sept. 25, 2007)); Hay Decl. ¶ 5. The Court of Cassation also explained that termination provisions that allow terminating a contract for minor defaults cannot be enforced. *See id.* By its own terms, it is evident that Article L.442-6 constitutes public policy: Article L.442-6 grants the public prosecutor the right to commence an action for violations. *See id.* Ex. 1 (Article L.442-6-III) ("the action is instituted before the competent civil or commercial court … by the public prosecutor, by the Minister of the Economy or by the President of the Competition Council"); *id.* ¶ 6. The article also provides for civil monetary fines. *Id.* Tropico intends to request the assistance of the public prosecutor and a representative of the Minister of the Economy in the French Code Litigation, pursuant to Article L.442-6-III, which provides for this. *See id.* ¶ 7, Ex. 1. Because Article L.442-6-I-5 constitutes public policy, contractual parties cannot agree to supplant the law.[3] *See id.* ¶ 8. Tropico's claim in the French Code Litigation is, therefore, a claim uniquely arising under French law and cannot be resolved on a judgment of King Features' claims in this Court.

*Canon Latina America, Inc. v. Lantech (CR), S.A.*, 508 F.3d 597 (11th Cir. 2007) involved facts almost identical to those presented here. In *Canon Latina*, the Eleventh Circuit reversed the district court's order granting the plaintiff's request for an injunction enjoining a

---

[3] It is also well-established in the United States that certain claims and rights cannot be waived by parties by contract or agreement. *See, e.g., United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 491 (2d Cir. 1961) (under the Fair Labor Standards Act, "the statutory requirement of prompt compensation cannot be waived by agreement"); *Warden v. E.R. Squibb & Sons, Inc.*, 840 F. Supp. 203, 207 (E.D.N.Y. 1993) (finding that pursuant to New York's Worker's Compensation Law, an employee may not validly waive his right to claim worker's compensation); *Wells Fargo Bank Northwest, N.A. v. Energy Ammonia Trans. Corp.*, No. 01 Civ. 5864 (JSR), 2002 WL 31368624, at *2 (S.D.N.Y. Oct. 21, 2002) ("the invalidity of a contract offensive to public policy cannot be waived by the parties") (internal quotation marks and citations omitted).

5

proceeding in Costa Rica. The plaintiff Canon Latin America, Inc. ("Canonlat"), a Florida corporation, entered into an agreement with the defendant Lantech (C.R.), S.A. ("Lantech"), a Costa Rican corporation. Under the agreement, Lantech was appointed as a non-exclusive distributor of Canon brand products in Costa Rica. The agreement also contained a forum selection and choice of law clause in favor of Florida. Over Lantech's objections, Canonlat appointed an additional distributor in Costa Rica. At around the same time, Lantech had fallen behind on its payments to Canonlat. Lantech commenced a lawsuit in Costa Rica against Canonlat and the additional distributor for violating Costa Rica Public Law 6209, the Representatives of Foreign Companies Act.[4] Thereafter, Canonlat filed a lawsuit in the Southern District of Florida seeking, among other things a declaratory judgment that the forum selection, choice of law and non-exclusivity provisions of the agreement were valid and enforceable, and an injunction barring Lantech for maintaining its lawsuit in Costa Rica. *Id.* at 599-600. The district court granted Canonlat's request for a permanent injunction enjoining Lantech from prosecuting its case in Costa Rica. On appeal, Lantech argued that resolution of the claims in the Florida district court would not be dispositive of the claim in Costa Rica. *Id.* at 601. Canonlat countered that the two lawsuits shared similar claims because they both sought a declaration about the validity and enforceability of the agreement's forum selection and choice of law clauses, a declaration about Lantech's exclusive distributor status and a declaration about monetary damages. *Id.*

The Eleventh Circuit rejected Canonlat's argument and found that the district court erred in granting the permanent anti-suit injunction against Lantech. *Id.* at 602. In so doing, the Eleventh Circuit explained, "Lantech's Costa Rican action hinges on statutory rights that are

---

[4] The relevant provisions of the Act involved indemnification upon termination of a representation, distribution or manufacturing contract. *See id.* at 600, n.2.

unique to Costa Rica and that cannot be resolved by a judgment of the district court on Canonlat's claims in Florida." *Id.* The court further explained that the fact that Lantech could have brought its Costa Rican law claim in the district court by counterclaim was "unimportant because it was under no obligation to do so pursuant to the Federal Rules of Civil Procedure." *Id.* at 602, n.3. Specifically, Fed. R. Civ. P. 13 provides that a counterclaim is not compulsory if at the time the action was commenced the claim was the subject of another pending action. *Id.* (quoting Fed. R. Civ. P. 13(a)(1)). As is the case here, Lantech's claim was the subject of the Costa Rican lawsuit, which was pending at the time Canonolat brought its claims in the district court and therefore, was not a compulsory counterclaim. *Id.* The Eleventh Circuit also noted that the forum selection was of no consequence to Lantech's Costa Rican claim because the Costa Rican court found that for a public policy law such as Costa Rica Public Law 6209, the jurisdiction of the courts of Costa Rica cannot be waived.

As in *Canon Latina*, Article L.442-6-I-5 is a public policy law that cannot be waived by contractual provisions. *See* Hay Decl. Ex. 2 (*Beaumont v. X "agent de service Peugeot,"* No. 06-15517 (Commercial Division of the Court of Cassation Sept. 25, 2007)); *id.* ¶ 5. Thus, notwithstanding the choice of law and forum selection clauses in favor of New York, Tropico's Article L.442-6-I-5 claim is properly before the French court. Under the Federal Rules of Civil Procedure, Tropico is not required to assert a counterclaim under Article L.442-6-I-5 in this action. *See Canon Latina, supra*, 508 F.3d at 602, n.3. Resolution of this action will not be dispositive of Tropico's claim in France. Accordingly, the threshold requirements for an anti-suit injunction have not been met and Hearst Holding's motion must be denied. *See, e.g., Space Imaging*, 1999 WL 511759; *Matter of Maritima Aragua,* 1990 WL 180135; *Computer Assocs.*, 950 F. Supp. 48.

7

### C.     The *China Trade* Factors Do Not Warrant An Injunction Enjoining The French Code Litigation

Because King Features has failed to meet the threshold requirements for an anti-suit injunction, no further analysis of the *China Trade* factors is necessary.  Should the Court decide otherwise, the motion for an anti-suit injunction must still be denied.  Among the *China Trade* factors, the ones of greater significance are whether the foreign action threatens the jurisdiction of the enjoining forum and whether strong public policies of the enjoining forum are threatened by the foreign action.  *China Trade*, 838 F.2d at 36.

The French Code Litigation here does not pose a threat to the jurisdiction of this Court.  The French court has not attempted to enjoin the proceedings here and Tropico has not sought to prevent this Court from exercising its jurisdiction over this lawsuit.  *See id.* at 37.

King Features contends that the public policy of enforcing forum selection clauses is threatened by the French Code Litigation.  In support of this argument, King Features relies on a decision from the Ninth Circuit, *E.&J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984 (9th Cir. 2006).  Pl. Br.[5] at 5.  Unlike in *E.&J. Gallo*, the French Code Litigation here is premised on a French public policy law that cannot be waived by contractual provisions, including a forum selection clause.  Moreover, Tropico has submitted to the jurisdiction of this Court in this lawsuit pursuant to the forum selection clause.  Accordingly, the public policy of enforcing forum selection clauses is not threatened by the French Code Litigation.

As to the vexatiousness of the foreign lawsuit and a "race to judgment" causing additional expense, the Second Circuit has found that "since these factors are likely to be present whenever parallel actions are proceeding concurrently, an anti-suit injunction grounded on these

---

[5]     "Pl. Br." refers to Plaintiff's Memorandum of Law in Support of its Motion for a Permanent Injunction or in the Alternative a Preliminary Injunction, dated February 14, 2008.

[] factors alone would tend to undermine the policy that allows parallel proceedings to continue and disfavors anti-suit injunctions." *China Trade*, 838 F.2d at 37.

### D. Under Principles Of Comity The Anti-Suit Injunction Should Be Denied

The Second Circuit has cautioned that "an anti-foreign-suit injunction should be 'used sparingly' and should be granted 'only with care and great restraint.'" *China Trade*, 838 F.2d at 36 (citations omitted). "The fact that the injunction operates only against the parties, and not directly against the foreign court, does not eliminate the need for due regard to principles of international comity because such an order effectively restricts the jurisdiction of the court of a foreign sovereign." *Id.* at 35 (citations omitted). Indeed, in the Second Circuit, "[p]rinciples of comity *weigh heavily* in the decision to impose a foreign anti-suit injunction." *LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194, 200 (2d Cir. 2004) (internal quotation marks and citations omitted) (emphasis added).[6] Comity militates strongly against an injunction here. *Id.*

The Agreement between the parties was to be performed in France. *See* Compl. Ex. A. Pursuant to the Agreement, Tropico, a French company, was to exploit the Betty Boop trademark on merchandise sold in France. *See id.* Moreover, beginning in 1994, King Features designated the French company, RMP, as it agent in France. *See* Compl. Ex. B. Since that time, RMP has been responsible for issuing all invoices, collecting royalties paid by Tropico, mediating between King Features and Tropico in negotiating commercial and financial matters, and transmitting

---

[6] King Features' reliance on the Ninth Circuit decision *E.&J. Gallo*, 446 F.3d 984, which, according to Plaintiff, "found that comity did not weigh against issuance of the anti-suit injunction," is misplaced because the Ninth Circuit does not apply the same standard as the Second Circuit for anti-suit injunctions. Plaintiff's Br. at 6. The Second Circuit has adopted the "conservative approach," under which "comity dictates that foreign antisuit injunctions be issued sparingly and only in the rarest of cases." *Goss Int'l Corp. v. Man Roland Druckmaschinen Aktiengesellschaft*, 491 F.3d 355, 359-60 (8th Cir. 2007) (internal quotation marks omitted) (citing, among other Circuits' decisions, the Second Circuit decision of *China Trade*, 837 F.2d at 35-36). In contrast, the Ninth Circuit has followed "the 'liberal approach,' which places only modest emphasis on international comity …." *See id.* at 360 (citing among other Circuits' decisions, the Ninth Circuit decision of *E.&J. Gallo*, 446 F.3d at 989-91).

9

approval forms for merchandise. *See id.* Payments were also made in Euros as opposed to the U.S. dollar. *See* Compl. Ex. A. Apart from King Features being a New York corporation (*see* Compl. ¶ 5), the Agreement centers around France. As explained above, Article L.442-6-I-5 constitutes French public policy that cannot be waived by the agreement of parties. Accordingly, France has a strong interest in determining whether one of its public policy laws has been violated, notwithstanding the New York choice of law and forum selection clause. King Features' anti-injunction motion should, therefore, be denied. *See LAIF X SPRL*, 390 F.3d at 200 (denying anti-suit injunction, among other reasons, in deference to Mexico's strong interest in adjudicating an issue arising under Mexican law).

## II. PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION SHOULD BE DENIED

It is well established in the Second Circuit that "in order to obtain a preliminary injunction the movant must show: (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Comverse, Inc. v. Am. Telecommunications, Inc.*, No. 06 Civ. 6825 (PKL), 2006 WL 3016315, at *4 (S.D.N.Y. Oct. 23, 2006) (citations to Second Circuit cases omitted). These elements must be established by a preponderance of the evidence. *Id.* (citations omitted). "This analytic framework applies to a preliminary anti-suit injunction as it does to any other sort of preliminary injunction." *Id.* (citing *In re Millenium Seacarriers, Inc.*, 458 F.3d 92 (2d Cir. 2006)).

The most important prerequisite for a preliminary injunction is a showing of irreparable harm, which is an "injury for which a monetary award cannot be adequate." *Id.* at *5 (citations to Second Circuit cases omitted). Irreparable harm cannot be merely remote or speculative but

10

must be imminent.  The movant is also required to establish a likelihood of irreparable harm and not just a possibility of irreparable harm.  *Id.* (citations to Second Circuit cases omitted).  The only "irreparable harm" that King Features has identified is "the need to litigate a dispute overseas in a forum other than the forum chosen in an agreed-upon forum selection clause."  Pl. Br. at 8.  King Features has not met its "heavy burden" of establishing irreparable harm.  *Empresa Generadora de Electricidad Itabo, S.A. v. Corporacion Dominicana de Empresas Electricas Estatales*, No. 05 Civ. 5004 RMB, 2005 WL 1705080, at *8 (S.D.N.Y. Jul. 18, 2005).

In a case similar to the one here, *Energy Capital Co. v. Caribbean Trading and Fidelity Corp.*, No. 93 Civ. 8100, 1996 WL 157498 (S.D.N.Y. Apr. 4, 1996), the court rejected the plaintiffs' motion for a preliminary injunction to enjoin a proceeding in Nigeria.  *See id.* at *10.  The plaintiffs in *Energy Capital* argued that litigating claims relating to the operative agreement both in New York and in Nigeria in contravention of a forum selection clause in the agreement, the possibility of a judgment up to $5 million in Nigeria and spending thousands of dollars to defend the Nigerian action constituted "irreparable harm."  *Id.*  The *Energy Capital* court, however, found that this did not establish a likelihood of irreparable harm.  *Id.*  As in *Energy Capital*, King Features' has not demonstrated a likelihood of irreparable harm.  For that reason alone, King Features' motion for a preliminary injunction must be denied.  *See Comverse*, 2006 WL 3016315 at *6 ("[a]bsent a showing of imminent, irreparable harm, this Court will not consider the other factors for the issuance of a preliminary injunction").

## CONCLUSION

For the reasons set forth above, King Features' motion for a permanent injunction, or in the alternative a preliminary injunction, enjoining the French Code Litigation should be denied.

Dated: February 28, 2008
      New York, New York

FOX HORAN & CAMERINI LLP

By:   /s/ Kathleen M. Kundar
      Kathleen M. Kundar (KK 1674)
      JooYun Kim (JK 7290)
825 Third Avenue
New York, New York 10022
T: (212) 480-4800
F: (212) 269-2383
*Attorneys for Defendant Tropico Diffusion*