UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
HEARST HOLDINGS, INC.,

                        Plaintiff,                       No. 08 Civ. 1546

         v.                                        ECF CASE

TROPICO DIFFUSION,

                        Defendant.

-----------------------------------------------------------X

### DECLARATION OF OURI AMAR

OURI AMAR solemnly declares pursuant to 28 U.S.C. § 1746 and under penalty of perjury, that the following is true and correct:

1. I am the President of Tropico Diffusion ("Tropico"). As such, I have personal knowledge of the facts stated in this declaration or base my statement on the records of Tropico. I submit this declaration in support of Tropico's opposition to Plaintiff Hearst Holdings, Inc., King Features Syndicate Division's ("King Features") motion for a permanent or preliminary anti-suit injunction.

2. Tropico is a French corporation that has been manufacturing and marketing merchandise under various license agreements for approximately 20 years. Beginning in 1994, King Features granted Tropico the rights to exploit merchandise with the Betty Boop character in France. In order to promote the national development of Betty Boop merchandise in France, Tropico created a network of franchises under the name "Avenue of the Stars." Today, the network consists of 26 franchises.

3. Over the years, the business relationship between the Tropico and King Features was so successful and intimate that certain articles of merchandise were manufactured under a common trademark.

4. In total, King Features and Tropico have entered into 19 licensing agreements with varying covered territories and scope of exploitation. The most recent agreement, dated as of January 26, 2005 (the "Agreement") is the subject of this New York lawsuit and was scheduled to expire on December 31, 2007. A true and correct copy of the Agreement is attached to the Complaint filed in this litigation by King Features ("Complaint" or "Compl.") as Exhibit A.

5. At the end of 2003, because of the commercial success of the Betty Boop merchandise in France, there was an increasing prevalence of unlicensed Betty Boop products, which was hurting Tropico's legitimate market interest. This problem arose because former licensees of the Betty Boop trademark exploited a "sell-off" provision in the agreements, which allowed them to continue to sell any remaining Betty Boop products for a period of time post termination. These former licensees would have unusually high quantities of left over Betty Boop products during the "sell-off" period, but King Features never objected to the practice. Moreover, because of the laws of the European Union ("EU"), Betty Boop products were freely being imported to France from other member States of the EU. Accordingly, Tropico in 2006 requested a license for exploiting Betty Boop merchandise in all of Europe. Nevertheless, King Features did little to stop the saturation of the French market with "unlicensed" Betty Boop products and parallel importations in France of Betty Boop products, to Tropico's business detriment.

6. King Features ultimately denied Tropico's request for a European license. The parties continued to negotiate, but on June 18, 2007, to Tropico's surprise, King Features,

through its French agent, sent a notice of its intent not to renew even the Agreement for France, which was reaffirmed in an August 2, 2007 written notice.

7. On September 28, 2007, King Features terminated the Agreement on the ground that Tropico's payment for royalties in the second quarter of 2007 (totaling EUR 35,000) was overdue. Previously, Tropico had never been late with a payment for royalties. The "delay" was precipitated by King Features' failure to provide timely approvals for new licensed products pursuant to the Agreement, which was damaging to Tropico. For example, on March 15, 2007, Tropico requested King Features' approval for a certain Betty Boop product. Having failed to hear from King Features, Tropico sent a reminder on July 10 and King Features finally provided its approval on July 26. Another request for approval of a product, which was first requested in June 2007 and then in July 2007, with reminders on October 15 and October 18, was finally granted by King Features on October 30, 2007. Notably, this was after King Features' termination of the Agreement on September 28. Despite King Features' conduct, Tropico did make the payment on October 2, 2007.

8. Accordingly, on January 11, 2008, Tropico commenced an action against King Features in the Commercial Court of Paris, asserting a claim under Article L.442-6-1-5 of the French Commercial Code ("French Code Litigation"). A true and correct copy of the summons and complaint filed by Tropico in the French Code Litigation is attached to the King Features' Complaint as Exhibit B. I adopt the facts set forth in the summons and complaint filed by Tropico in the French Code Litigation as if fully stated herein.

Dated: February 28, 2008
Villejuif, France

_____
OURI AMAR,
President of Tropico Diffusion