UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
HEARST HOLDINGS, INC.,

                         Plaintiff,                           No. 08 Civ. 1546 (WHP)

     v.

                                                         ECF CASE

TROPICO DIFFUSION,

                        Defendant.

-----------------------------------------------------------X

## DECLARATION OF MAITRE JULIEN HAY

MAITRE JULIEN HAY, solemnly declares pursuant to 28 U.S.C. § 1746 and under penalty of perjury, that the following is true and correct:

1.     My name is Julien Hay. I am an attorney at law and a member of the Paris bar. I make this declaration in opposition to the motion of Plaintiff Hearst Holdings, Inc., King Features Syndicate Division's ("King Features" or "Plaintiff"), by order to show cause, for a permanent or preliminary injunction prohibiting the Defendant Tropico Diffusion ("Tropico") from maintaining, prosecuting and pursuing the action brought by Tropico against King Features in the Commercial Court of Paris for violation of Article L.442-6-I-5 of the French Commercial Code (the "French Code Litigation").

2.     I represent Tropico in the French Code Litigation. The Summons and Complaint in the French Code Litigation (*see* SDNY Complaint . Ex. B) accurately, and in greater detail, set forth the legal analysis concerning Article L.442-6-I-5 of the French Commercial Code. King Features is represented by counsel in the French Code Litigation and has thus been aware of the text of Article L.442-6-I-5 and the *Beaumont*

opinion cited therein (and referred to below) since mid-January when the Summons and the Complaint in the French Code Litigation were served on King Features.

3. A true and correct copy of the relevant provisions of Article L.442-6 is attached hereto as <u>Exhibit 1</u>. A translation of these provisions will be provided on March 3, 2008.

4. Article L.442-6-I-5 of the French Commercial Code requires sufficient notice of terminations of commercial relations, such as licensing agreements, even if the terms of the contract purport to supplant the French law. This French Commercial Code provision does not prohibit terminations; rather it seeks to assure that the length of notice of termination given by one contracting party to the other is in proportion to the length and depth of the historical relationship of the parties. The objective of the French law is to give the terminated licensee sufficient time to reorganize its business as affected by the termination in order to prevent so called "brutal terminations" which fail to reasonably take into account the time the parties have done business together and thus effectively robs from the other party what has been achieved by the relationship.

5. The Commercial Division of the Court of Cassation, the highest French court for commercial and financial matters, recently held that the provisions of Article L.442-6-I-5 constitute public policy. Specifically, the French court held that "[c]lauses allowing for termination without notice cannot create an obstacle to the public policy provisions of Article L.442-6-I-5 of the Commercial Code." *Beaumont v. X "agent de service Peugeot,"* No. 06-15517 (Commercial Division of the Court of Cassation Sept. 25, 2007). A true and correct copy of the decision is attached hereto as <u>Exhibit 2</u>. A translation of the decision will be provided on March 3, 2008.

6. By its own terms, it is evident that Article L.442-6 constitutes public policy: Article L.442-6 grants the public prosecutor the right to commence an action for violations. *See* Exhibit 1 (Article L.442-6-III) ("the action is instituted before the competent civil or commercial court ... by the public prosecutor, by the Minister of the Economy or by the President of the Competition Council"). The article also provides for civil monetary fines. *Id.*

7. In the French Code Litigation, Tropico intends to request the assistance of the public prosecutor and a representative of the Minister of the Economy in the French Code Litigation, pursuant to Article 442-6-III, which provides for this.

8. Because Article L.442-6-I-5 constitutes public policy, contractual parties cannot agree to supplant the law. *Beaumont v. X "agent de service Peugeot," supra.*

Dated: February 28, 2008
      Paris, France

                                                 JULIEN HAY

# EXHIBIT 1

Article L442-6
Modifié par LOI n°2008-3 du 3 janvier 2008 - art. 8

I. - Engage la responsabilité de son auteur et l'oblige à réparer le préjudice causé le fait, par tout producteur, commerçant, industriel ou personne immatriculée au répertoire des métiers :

1° De pratiquer, à l'égard d'un partenaire économique, ou d'obtenir de lui des prix, des délais de paiement, des conditions de vente ou des modalités de vente ou d'achat discriminatoires et non justifiés par des contreparties réelles en créant, de ce fait, pour ce partenaire, un désavantage ou un avantage dans la concurrence ;

2° a) D'obtenir ou de tenter d'obtenir d'un partenaire commercial un avantage quelconque ne correspondant à aucun service commercial effectivement rendu ou manifestement disproportionné au regard de la valeur du service rendu. Un tel avantage peut notamment consister en la participation, non justifiée par un intérêt commun et sans contrepartie proportionnée, au financement d'une opération d'animation commerciale, d'une acquisition ou d'un investissement, en particulier dans le cadre de la rénovation de magasins ou encore du rapprochement d'enseignes ou de centrales de référencement ou d'achat. Un tel avantage peut également consister en une globalisation artificielle des chiffres d'affaires ou en une demande d'alignement sur les conditions commerciales obtenues par d'autres clients ;

b) D'abuser de la relation de dépendance dans laquelle il tient un partenaire ou de sa puissance d'achat ou de vente en le soumettant à des conditions commerciales ou obligations injustifiées, notamment en lui imposant des pénalités disproportionnées au regard de l'inexécution d'engagements contractuels. Le fait de lier l'exposition à la vente de plus d'un produit à l'octroi d'un avantage quelconque constitue un abus de puissance de vente ou d'achat dès lors qu'il conduit à entraver l'accès des produits similaires aux points de vente ;

3° D'obtenir ou de tenter d'obtenir un avantage, condition préalable à la passation de commandes, sans l'assortir d'un engagement écrit sur un volume d'achat proportionné et, le cas échéant, d'un service demandé par le fournisseur et ayant fait l'objet d'un accord écrit ;

4° D'obtenir ou de tenter d'obtenir, sous la menace d'une rupture brutale totale ou partielle des relations commerciales, des prix, des délais de paiement, des modalités de vente ou des conditions de coopération commerciale manifestement dérogatoires aux conditions générales de vente ;

5° De rompre brutalement, même partiellement, une relation commerciale établie, sans préavis écrit tenant compte de la durée de la relation commerciale et respectant la durée minimale de préavis déterminée, en référence aux usages du commerce, par des accords interprofessionnels. Lorsque la relation commerciale porte sur la fourniture de produits sous marque de distributeur, la durée minimale de préavis est double de celle qui serait applicable si le produit n'était pas fourni sous marque de distributeur. A défaut de tels accords, des arrêtés du ministre chargé de l'économie peuvent, pour chaque catégorie de produits, fixer, en tenant compte des usages du commerce, un délai minimum de préavis et encadrer les conditions de rupture des relations commerciales, notamment en fonction de leur durée. Les dispositions qui précèdent ne font pas obstacle à la faculté de résiliation sans préavis, en cas d'inexécution par l'autre partie de ses obligations ou en cas de force majeure. Lorsque la rupture de la relation commerciale résulte d'une mise en concurrence par enchères à distance, la durée minimale de préavis est double de celle résultant de l'application des dispositions du

présent alinéa dans les cas où la durée du préavis initial est de moins de six mois, et d'au moins un an dans les autres cas ;

6° De participer directement ou indirectement à la violation de l'interdiction de revente hors réseau faite au distributeur lié par un accord de distribution sélective ou exclusive exempté au titre des règles applicables du droit de la concurrence ;

7° De soumettre un partenaire à des conditions de règlement manifestement abusives, compte tenu des bonnes pratiques et usages commerciaux, et s'écartant au détriment du créancier, sans raison objective, du délai indiqué au huitième alinéa de l'article L. 441-6 ;

8° De procéder au refus ou retour de marchandises ou de déduire d'office du montant de la facture établie par le fournisseur les pénalités ou rabais correspondant au non-respect d'une date de livraison ou à la non-conformité des marchandises, lorsque la dette n'est pas certaine, liquide et exigible, sans même que le fournisseur n'ait été en mesure de contrôler la réalité du grief correspondant.

9° De ne pas communiquer ses conditions générales de vente, dans les conditions prévues à l'article L. 441-6, à tout acheteur de produits ou tout demandeur de prestations de services qui en fait la demande pour l'exercice d'une activité professionnelle.

II. - Sont nuls les clauses ou contrats prévoyant pour un producteur, un commerçant, un industriel ou une personne immatriculée au répertoire des métiers, la possibilité :

a) De bénéficier rétroactivement de remises, de ristournes ou d'accords de coopération commerciale ;

b) D'obtenir le paiement d'un droit d'accès au référencement préalablement à la passation de toute commande ;

c) D'interdire au cocontractant la cession à des tiers des créances qu'il détient sur lui.

L'annulation des clauses relatives au règlement entraîne l'application du délai indiqué au deuxième alinéa de l'article L. 441-6, sauf si la juridiction saisie peut constater un accord sur des conditions différentes qui soient équitables.

III. - L'action est introduite devant la juridiction civile ou commerciale compétente par toute personne justifiant d'un intérêt, par le ministère public, par le ministre chargé de l'économie ou par le président du Conseil de la concurrence lorsque ce dernier constate, à l'occasion des affaires qui relèvent de sa compétence, une pratique mentionnée au présent article.

Lors de cette action, le ministre chargé de l'économie et le ministère public peuvent demander à la juridiction saisie d'ordonner la cessation des pratiques mentionnées au présent article. Ils peuvent aussi, pour toutes ces pratiques, faire constater la nullité des clauses ou contrats illicites, demander la répétition de l'indu et le prononcé d'une amende civile dont le montant ne peut excéder 2 millions d'euros. La réparation des préjudices subis peut également être demandée. Dans tous les cas, il appartient au prestataire de services, au producteur, au commerçant, à l'industriel ou à la personne immatriculée au répertoire des métiers qui se prétend libéré de justifier du fait qui a produit l'extinction de son obligation.

IV. - Le juge des référés peut ordonner la cessation des pratiques discriminatoires ou abusives ou toute autre mesure provisoire.

# EXHIBIT 2

**Cour de cassation**
**chambre commerciale**
**Audience publique du mardi 25 septembre 2007**
**N° de pourvoi : 06-15517**
Non publié au bulletin **Rejet**

**Président : M. TRICOT, président**

## REPUBLIQUE FRANCAISE

## AU NOM DU PEUPLE FRANCAIS

AU NOM DU PEUPLE FRANCAIS

LA COUR DE CASSATION, CHAMBRE COMMERCIALE, FINANCIERE ET ECONOMIQUE, a rendu l'arrêt suivant :

Sur le moyen unique :

Attendu, selon l'arrêt déféré (Douai, 23 mars 2006), que M. X..., "agent de service Peugeot" lié par divers contrats à durée déterminée, puis par un dernier contrat à durée indéterminée, à la société Beaumont automobiles, concessionnaire Peugeot, l'a assignée en réparation du préjudice que lui a causé la rupture du contrat sans préavis par application de la clause résolutoire qu'elle lui a signifiée le 2 janvier 200 ;

Attendu que la société Beaumont automobiles reproche à l'arrêt de l'avoir condamnée à payer à M. X... une indemnité de 13 385 euros, alors, selon le moyen :

1 / que si la rupture de relations commerciales établies doit être précédée d'un préavis, il est dérogé à cette règle en cas d'inexécution par le contractant de ses obligations ; qu'en l'espèce, pour décider que la société Beaumont automobiles avait engagé sa responsabilité envers son agent en faisant application de la clause résolutoire stipulant la possibilité de résilier de plein droit et sans préavis le contrat à durée indéterminée la liant à M. X... en cas de manquement de ce dernier à ses obligations contractuelles, la cour d'appel a retenu au contraire qu'il ne pourrait être dérogé à la règle selon laquelle il ne peut être mis fin sans préavis à des relations commerciales établies, violant ainsi par refus d'application l'article L. 442-6 I 5 in fine du code de commerce ;

2 / que ne commet pas de faute la partie qui, pour mettre fin aux relations contractuelles du fait des manquements de son cocontractant à ses obligations contractuelles, applique une clause résolutoire stipulant la résiliation de la convention de plein droit et sans préavis lorsque ces manquements sont avérés ; qu'en l'espèce, la cour d'appel a constaté que le contrat à durée indéterminée conclu par la société Beaumont automobiles et M. X... stipulait qu'il serait résilié de plein droit et sans préavis en cas de non-respect par l'agent service Peugeot des standards contractuels avant le 31 décembre 2000 ; qu'elle a aussi constaté les manquements de M. X... aux engagements souscrits ; qu'en retenant que la société Beaumont automobiles avait commis une faute en résiliant la convention d'agent de service malgré l'acquisition de la

clause résolutoire, la cour d'appel a violé les articles 1147 du code civil et, par refus d'application, les articles 1134 du code civil et L. 442-6 I 5 du code de commerce ;

3 / que la preuve d'une faute dans l'exercice de la faculté de résiliation stipulée dans une convention incombe à celui qui l'invoque ;

qu'en l'espèce, pour décider que la société Beaumont automobiles avait engagé sa responsabilité en mettant en oeuvre la clause de résiliation de plein droit, la cour d'appel a retenu qu'elle n'établissait pas la gravité des manquements qu'elle reprochait à M. X..., inversant ainsi la charge de la preuve et violant l'article 1315 du code civil ;

Mais attendu qu'après avoir énoncé qu'il ne peut être fait obstacle aux dispositions d'ordre public de l'article L. 442-6 I 5 du code de commerce par des clauses permettant une rupture sans préavis dès lors que l'inexécution du contrat n'a pas un degré de gravité suffisant, l'arrêt relève que le concessionnaire pouvait résilier le contrat de plein droit, à effet immédiat et sans indemnité, notamment en cas de non-respect des méthodes, normes ou standards du constructeur ou des dispositions de l'article 3 de l'annexe 1 relatives à l'identification et au standards que l'agent s'était engagé à respecter au plus tard avant le 31 décembre 2000, et constate que l'agent avait reconnu devoir se mettre en conformité en ce qui concerne cinq standards sur les vingt-deux fixés par le constructeur ; qu'il retient encore que certains manquements, anciens, n'ont pas été un obstacle à la conclusion du nouveau contrat, et que le concessionnaire ne précisait pas en quoi un opacimètre était un appareil indispensable au maintien des relations contractuelles ni quelles étaient les conséquences de l'absence d'un correspondant au conseiller technique qui devait être le fils de M. X... ; qu'il en conclut qu'il n'est pas démontré que les manquements établis aux engagements souscrits étaient d'une gravité telle qu'ils justifiaient une rupture immédiate eu égard à l'ancienneté des relations commerciales et aux efforts d'adaptation de l'agent, tandis qu'il ajoute que les reproches contenus dans une lettre du 25 mai 2000 et dans la lettre de rupture, ne sont pas établis ; qu'ainsi, sans inverser la charge de la preuve, la cour d'appel a fait l'exacte application des textes invoqués ; que le moyen n'est pas fondé ;

PAR CES MOTIFS :

REJETTE le pourvoi ;

Condamne la société Beaumont automobiles aux dépens ;

Vu l'article 700 du nouveau code de procédure civile, la condamne à payer à M. X... la somme de 2 000 euros ;

Ainsi fait et jugé par la Cour de cassation, chambre commerciale, financière et économique, et prononcé par Mme Garnier, conseiller doyen qui en a délibéré, en remplacement du président, en l'audience publique du vingt-cinq septembre deux mille sept.

**Décision attaquée :** cour d'appel de Douai (chambre 2, section 1) du 23 mars 2006